IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

Luis Alcala
3051 Ocean Ave, Apt C10
Bk, NY 11235

(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)

-against-

MTA Metropolitan State Authority
Commerical ligation Unit
2 Broadwey, NY, NY 10004

(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)

Complaint for a Civil Case

Case No. **24-cv-7331-EK-LB**
(to be filled in by the Clerk's Office)

Jury Trial:   ☐ Yes   ☐ No
(check one)

**Komitee, J**
**Bloom, MJ**

REC'D IN PRO SE OFFICE
OCT 15 '24 PM 2:23

I.  **The Parties to This Complaint**

   A.  **The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   Name: Luis Alcala
   Street Address: 3051 Ocean Ave, Apt C10
   City and County: Bk, NY 11235
   State and Zip Code:
   Telephone Number: 646 584 7064
   E-mail Address: Luisdalcala@gmail.com

   B.  **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

   Defendant No. 1
   Name: MTA - Metropolitan Transportation Authority
   Job or Title (if known): ligation unit
   Street Address: 2 Broadway
   City and County:
   State and Zip Code: NY, NY 10004
   Telephone Number:
   E-mail Address (if known):

   Defendant No. 2
   Name:
   Job or Title (if known):
   Street Address:
   City and County:

2

        State and Zip Code  _____
        Telephone Number  _____
        E-mail Address  _____
        (if known)

Defendant No. 3

        Name  _____
        Job or Title
        (if known)  _____
        Street Address City  _____
        and County State  _____
        and Zip Code
        Telephone Number  _____
        E-mail Address  _____
        (if known)

Defendant No. 4

        Name  _____
        Job or Title
        (if known)  _____
        Street Address City  _____
        and County State  _____
        and Zip Code
        Telephone Number  _____
        E-mail Address  _____
        (if known)

**II.   Basis for Jurisdiction**

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal question ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

A. **If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

See attached complaint.

B. **If the Basis for Jurisdiction Is Diversity of Citizenship**

1. The Plaintiff(s)

    a. If the plaintiff is an individual

    The plaintiff, *(name)* Luis Alcola, is a citizen of the State of *(name)* New York.

    b. If the plaintiff is a corporation

    The plaintiff, *(name)* MTA (Metropolitan State Authority), is incorporated under the laws of the State of *(name)* New York, and has its principal place of business in the State of *(name)* New York.

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

    a. If the defendant is an individual

    The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

4

b. If the defendant is a corporation

The defendant, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____. Or is incorporated under the laws of *(foreign nation)* _____, and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

_____
_____
_____

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

See attached complaint

I am seeking $80,000 for discrimination and racial profiling.

IV. **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

_I am seeking $80,000 for relief. See attached complaint._

V. **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A. **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _Oct 15_, 20_24_

Signature of Plaintiff _L Alc___

Printed Name of Plaintiff _Luis Alcola_

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

LUIS ALCALA,

        Plaintiff

Vs.

METROPOLITAN STATE AUTHORITY,

        Defendant

---

APPEARANCES

LUIS ALCALA,

Plaintiff, *Pro se*

3051 Ocean Avenue APT C10

Brooklyn NY, 11235

## 1. INTRODUCTION

I, Luis Alcala ("Plaintiff"), bring this action under Title II of the Civil Rights Act of 1964, asserting that the Metropolitan Transit Authority (MTA) discriminated against me in a place of public accommodation on the basis of my race. This lawsuit seeks redress for violations of my civil rights, alongside appropriate compensation for the damages I have suffered.

## 2. BACKGROUND

I have been the subject of various circumstances where MTA's machines have confiscated my money when trying to purchase MetroCards. Every time I reported these issues to the token booth employees, they informed me that nothing could be done and that I could not get my money back. One of the issues happened on June 1, 2020, when I walked over to the Sheepshead Bay train to buy a MetroCard for my nephew. I wanted to buy a 100-dollar MetroCard and subsequently placed five twenty-dollar bills in the machine. I momentarily received a message that it was processing the money, but the machine later froze and went back to the main screen. I approached police officers stationed near the machine who, on looking at the machine, directed that I go to the token booth employees and fill out a form requesting a refund.

A similar occurrence happened on July 4, 2020, when I walked to the Sheepshead Bay train station to buy tickets to Coney Island. I had three expired cards, which I needed combined for a total of $40. I approached an employee stationed at the main entrance who agreed to fulfill my request. However, once she entered the cards in the machine, they got stuck and we had to wait for a technician to come and fix it. I was later compelled to leave the station after a conflict arose between other people, and I eventually lost $40.

In November 2021, MTA refused to combine 16 MetroCards I had sent them under the argument that my request was illegal. This was followed by a message which stated that MTA would report me to the police for suspicious activity. A few days later, I got a letter stating that my request could not be completed since the customer service representatives were too busy.

Despite MTA's refusal of my requests, I always approached them amicably to try and resolve the issue peacefully. However, the organization has always opted to insult and racialize me. On April 14, 2021, I received a letter from MTA's Michael Desouza (attached hereunder as **Exhibit A**) threatening to open a police investigation under the claim that I intended to defraud the organization. The letter read in part that "an investigation of your claim history indicates that the number of MetroCards you submitted within a twelve (12) month period exceed the amount that could be considered personal use and creates an administrative burden that results in processing delays for customers. Please be advised that intentionally submitting fraudulent claims for the express purpose of obtaining either reimbursement or replacement MetroCard will be reported to the New York City Police Department's (NYPD) Special Investigation Unit (SIU) for further investigation." Whilst I understood their concerns it was unjustifiable to deem a customer complaint as an attempt to defraud. In several letters, the MTA has always insisted upon intimidating me before eventually admitting culpability and agreeing to a settlement agreement. In one of the letters dated November 23, 2021, MTA's Manager of MetroCard Customer Claims, Michael Desouza, emailed me that, "Please be advised that MetroCard Customer Claims provides services scaled to the consumption of MetroCards for personal use. An investigation of your claim history indicates that the number of MetroCards you submitted within a twelve (12) month period exceed the amount that could be considered personal use and creates an administrative burden that results in processing

delays for other customers. On some occasions, we have found that the card(s) were previously submitted by another customer who falls within the foregoing criteria and now they are once more submitted for reimbursement. This practice by you will be continuously monitored." A month later, the MTA admitted culpability and requested that I provide information relating to the transactions and malfunctioning of the machines as shown in Exhibit A. Whilst I appreciated the change of heart, their branding of me as a fraud was distasteful and unbecoming to what was an otherwise legitimate attempt at a refund.

Subsequently, between March 30, 2022, and April 16, 2022, I entered into a settlement with the MTA for $275 and, in exchange, promised to release it from all claims and actions. However, as part of the settlement negotiations, I indicated my desire to combine my expired MetroCards since MTA's customer service had previously denied this request. MTA's attorney had stated that he would ask the NYCTA customer service the best way the cards would be consolidated but subsequently denied that he had promised to have the issue looked into. The MTA's attorney and the employees subjected me to verbal abuse based on my nationality and age and ridiculed my attempts at justice. This made it difficult to pursue justice due to the disheartening messages I received from these individuals.

### 3. DISCUSSION

The primary issue in this case is whether the MTA's conduct constitutes discrimination in violation of New York Human Rights Laws and Title II of the Civil Rights Act of 1964. In 1965, New York City adopted a Human Rights Law that prohibits discrimination by any "place of public accommodation, resort or amusement." Title II prohibits discrimination on the basis of race, color, religion, or national origin in places of public accommodation, which include facilities such as restaurants, theaters, and public transportation systems that serve the public and affect interstate commerce (42 U.S.C. § 2000a(a)).

A plaintiff bringing a claim under Title II must allege facts showing (1) that he was deprived of equal use and enjoyment of a place of public accommodation and (2) facts that demonstrate discriminatory intent. *Coward v. Town & Village of Harrison*, 665 F. Supp. 2d 281, 307 (S.D.N.Y. 2009). A plaintiff must allege that he is a member of a protected class and must plead sufficient factual content to allow the Court to draw a reasonable inference that the

defendant was motivated by discriminatory intent. (*Broome v. Biondi*, 17 F. Supp. 2d 211, 217 (S.D.N.Y. 1997)).

I am of Hispanic descent, a protected class under Title II, and was qualified to use the MTA's services as a fare-paying customer. However, I was denied equal access to those services due to the discriminatory actions of MTA employees, as evidenced by their refusal to process my refund and consolidate my MetroCards, the accusations of fraud, and the racially charged insults I received. The services I sought—refunds and MetroCard consolidation—were available to other customers, but I was singled out and denied access due to my race and national origin.

The discriminatory intent of the MTA is further established by their pattern of conduct. As noted in *Coward v. Town & Village of Harrison*, 665 F. Supp. 2d 281, 307 (S.D.N.Y. 2009), the plaintiff must allege facts showing that they were deprived of the equal use and enjoyment of a place of public accommodation and that this deprivation was motivated by discriminatory intent. Here, the discriminatory remarks, coupled with the MTA's continued refusal to provide equal services, support an inference of intent based on my national origin.

Furthermore, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to Title II cases. In this analysis, the plaintiff has the initial burden to show a prima facie case for discrimination. If the plaintiff shows a prima facie case, then the burden of production shifts to defendants to provide a legitimate, nondiscriminatory reason for the action. Finally, if the defendants surmount this burden, plaintiff has the ultimate burden of persuasion to show that defendants claimed legitimate reason was not their "true reason, but rather a pretext for discrimination." Should the MTA attempt to argue that their refusal to process my refund or consolidate my MetroCards was due to some neutral reason, I will show that these reasons were pretextual, and that their true motivation was discriminatory.

It is well-established that Title II aims to prevent the "daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public" (*Daniel*

*v. Paul*, 395 U.S. 298, 307-08 (1969)). The MTA's conduct has caused me significant harm by subjecting me to precisely the kind of discrimination that Title II seeks to eliminate. Their racially charged accusations of fraud and refusal to accommodate my requests violate my right to equal access to public services and have caused me both financial and emotional distress.

## 4. CONCLUSION

The MTA's actions constitute a clear violation of Title II of the Civil Rights Act, as well as New York City's Human Rights Law, which prohibits discrimination in places of public accommodation on the basis of race and national origin. Based on the facts and law, I respectfully request that this Court award me compensation in the amount of {specific amount}, in addition to any other relief deemed just and proper, for the harm and discrimination I have suffered.

RESPECTFULLY SUBMITTED,

LUIS ALCALA.